United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SCOTT BOOTH,                                         No. C-04-5376 EMC

        Plaintiff,

      v.                                            **ORDER GRANTING DEFENDANTS'**
                                           **MOTION TO DISMISS AND REQUEST**
QUANTUM3D, INC., *et al.*,                           **FOR JUDICIAL NOTICE**
                                           **(Docket Nos. 14-15)**
        Defendants.
_____/

      Plaintiff Scott Booth originally sued Defendants Quantum3d, Inc. ("Quantum") and CG2, Inc. for (1) a declaratory judgment and (2) injunctive relief.  Currently pending before the Court is Defendants' motion to dismiss.  In the motion, Defendants argue that (1) CG2 should be dismissed with prejudice based on the prior holding of an Alabama district court (who transferred the case to this District) and (2) the claim for injunctive relief should be dismissed because it is a remedy and not a cause of action.  After Defendants filed their motion to dismiss, Mr. Booth filed a first amended complaint ("FAC").  Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby GRANTS the motion to dismiss.

## I.    FACTUAL & PROCEDURAL BACKGROUND

      Mr. Booth originally filed suit in state court in Alabama.  In the complaint, Mr. Booth alleged as follows.

      Mr. Booth co-founded CG2, a company that provided consulting services, *e.g.*, for visual reality modeling.  *See* Compl. ¶ 4.  In 2002, Quantum contacted him about acquiring CG2 and subsequently it acquired his interests in the company.  *See id.* ¶¶ 5-6.  Under the acquisition

United States District Court
For the Northern District of California

1  agreement (which is attached to the complaint), CG2 became a wholly owned subsidiary of

2  Quantum and the shareholders of CG2 became shareholders of Quantum.  *See* Agreement at 1

3  (Recital B); *see also id.* at 2-3 (discussing conversion of CG2 stock into Quantum stock).  Mr. Booth

4  ended up getting more than 471,000 shares of Quantum stock pursuant to the agreement.  *See*

5  Compl. ¶ 8.

6      Section 5.1 of the agreement is the relevant provision with respect to this litigation.  It

7  provides as follows:

8      Put Rights.  Beginning on the three year anniversary of the Closing
       Date and continuing for a period of six months, each former CG2
9      Shareholder . . . shall have the non-transferable right to provide notice
       to Quantum requiring it to buy all or a portion of the Quantum
10     Common Stock received by such Former CG2 Shareholder pursuant to
       this Agreement at a price per share of $3.00 (a "Put Notice"), which
11     Put Notice shall set forth the number of shares of Quantum Common
       Stock such Former CG2 Shareholder desires to sell (the "Put Shares").
12     Within 60 days from the receipt of any Put Notice (the "Purchase
       Period"), Quantum shall purchase all such Put Shares from such
13     Former CG2 Shareholder for cash . . . , and such Former CG2
       Shareholder shall simultaneously transfer to Quantum all certificates
14     representing such shares, duly endorsed and free of any liens,
       encumbrances and other restrictions on transferability.
15     Notwithstanding the foregoing, if Quantum shall furnish to the Former
       CG2 Holders a certificate signed by the President or Chief Executive
16     Officer of the Company stating that Quantum (i) is in good faith
       negotiations with one or more entities to consummate a Deemed
17     Liquidation Event . . . or (ii) has in good faith begun the process of
       making a public offering of shares of its equity securities pursuant to a
18     registration statement under the Securities Act of 1933, as amended,
       then Quantum shall have the right to extend the expiration of any
19     Purchase Period for a period of not more than 90 days.

20 Agreement at 29.  According to Mr. Booth, "Defendants have no intention of honoring the 'put

21 rights' obligation and have directly indicated [that he] is not entitled to the full value of his 'put

22 rights.'"  Compl. ¶ 9.

23      As noted above, Mr. Booth initially sued Defendants in state court in Alabama.  The claims

24 alleged were (1) a declaratory judgment and (2) injunctive relief.  Subsequently, Defendants

25

26

27

28

2

United States District Court
For the Northern District of California

1  removed the case to federal court. *See* RJN, Ex. 2.[1]  Quantum also answered the complaint at the

2  same time, but CG2 did not.

3          After the case was removed, Defendants filed a motion to transfer the case to this District or,

4  in the alternative, to dismiss, *see* RJN, Ex. 3, and Mr. Booth a motion to remand. *See* RJN, Ex. 4.

5  On November 22, 2004, the Alabama district court granted the motion to transfer and denied the

6  motion to remand. *See* RJN, Ex. 5.

7          In the order, the Alabama district court addressed first the motion to remand. Defendants

8  argued that remand was not proper because there was federal jurisdiction. More specifically,

9  according to Defendants, Mr. Booth had fraudulently joined CG2 to the case to defeat diversity

10  jurisdiction. Mr. Booth asserted that CG2 was not fraudulently joined because any determination of

11  his put rights under the acquisition agreement was dependent on whether he had violated a

12  noncompete agreement with Quantum (which as defined in the agreement included its subsidiary

13  CG2). *See* RJN, Ex. 5, at 5; *see also* Opp'n, Ex. 4 (noncompete agreement between Quantum

14  (including its subsidiaries) and Mr. Booth, dated 7/3/02). The noncompete agreement was executed

15  at the same time as the acquisition agreement. *See* RJN, Ex. 5, at 1-2. Under the noncompete

16  agreement, Mr. Booth "agreed not to engage in certain activities, referred to as 'restricted business'

17  in a 'restricted territory' and further agreed not to solicit CG2's customers, suppliers, associates,

18  employees or consultants or interfere in any manner in the contractual or employment relationship

19  between Quantum3d or CG2 and any customer, supplier, associate, employee or consultant of

20  Quantum3d or CG2." RJN, Ex. 5, at 2. Before Mr. Booth filed suit against Defendants, he received

21  a letter from Quantum claiming that he had violated the noncompete agreement and that Quantum

22  was "'off setting, against the damages you have and are continuing to cause it, . . . any amounts due

23  to you in the future under Section 5.1 of the . . . [Acquisition Agreement].'" RJN, Ex. 5, at 3

24  (quoting letter from Quantum to Mr. Booth, dated 3/11/04); *see also* Opp'n, Ex. 1 (letter from

25

26  ───────────────

27          [1] Defendants have asked the Court to take judicial notice of a number of documents, consisting of filings with, orders in, and/or docket entries in the state and federal courts in Alabama. *See* Docket No. 15 (request for judicial notice). The Court grants the request pursuant to Federal Rule of Evidence

28  201. The Court also notes that Mr. Booth has not objected to the request for judicial notice.

United States District Court
For the Northern District of California

counsel for Quantum to S. Booth, dated 3/11/04) (discussing alleged violation of noncompete agreement between Quantum and Mr. Booth).

The Alabama district court agreed with Defendants that CG2 had been fraudulently joined to defeat diversity jurisdiction, stating

> [i]t is undisputed that the only party that has any obligation as to the "Put Rights" is Quantum3d, the non-resident defendant. Thus, the Plaintiff's action for a declaratory judgment as to his rights under the Acquisition Agreement in no way involves CG2. Moreover, the only agreement which creates or affects the "Put Rights" is the Acquisition Agreement. A court will determine that Plaintiff is (or is not) "entitled to the full value of the 'put rights'" without any reference to the Non-Competition Agreement. There is nothing in the Acquisition Agreement that excuses payment of the put rights based on a violation of the Non-Competition Agreement. Even Quantum 3D's letter does not assert that a breach of the Non-Competition Agreement avoids or affects the "value of . . . [Plaintiff's] 'put rights.'" Rather, that letter states that because of the Plaintiff's alleged breached of the Non-Competition Agreement, Quantum 3d would "offset" its damages incurred by reason of Plaintiff's alleged breach against monies Quantum 3d otherwise owed to Plaintiff (including . . . under the put rights provision of the acquisition agreement). The only way that the Non-Competition Agreement would come before the court hearing Plaintiff's declaratory judgment action would be if the Defendants were to file a counterclaim seeking a determination that Plaintiff had violated the Non-Competition Agreement. As there is no claim asserted or capable of assertion against CG2, the resident defendant, under the Complaint as drafted by Plaintiff, the joinder of CG2 is fraudulent, and therefore CG2 is to be ignored for purposes of determining diversity of citizenship.

RJN, Ex. 5, at 7-8 (footnotes omitted).

In a footnote, the court added:

> Quantum 3d could not even raise alleged breach of the Non-Competition Agreement as a defense to Plaintiff's claim, as there is no interaction between the put rights and the Non-Competition Agreement. That is, breach of the Non-Competition Agreement is not a defense to an action on the put rights clause of the Acquisition Agreement. *Even if* Quantum 3d could raise such alleged breach as a defense, such defense would not be a basis for destroying diversity jurisdiction. *See Aetna Health, Inc. v. Davila*, 124 S. Ct. 2488, 2494 (2004) ("The Court has explained that 'whether a case is . . . [a federal question case] must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose.'"

RJN, Ex. 5, at 8 n.5 (emphasis added).

1    Having concluded that Mr. Booth had fraudulently joined CG2 to defeat diversity

2    jurisdiction, the Alabama district court denied Mr. Booth's motion to remand to state court.  The

3    Alabama district court then went on to transfer the case to this District because the acquisition

4    agreement contained a mandatory choice of forum clause providing for a California court (whether

5    state or federal).  *See* RJN, Ex. 5, at 8.

6    Subsequently, Mr. Booth asked the Alabama district court to enter an order allowing him to

7    file an interlocutory appeal of the court's decision regarding subject matter jurisdiction.  *See* RJN,

8    Ex. 6.  That request was denied.  *See* RJN, Ex. 7.  Mr. Booth then filed a motion to reconsider or, in

9    the alternative, for 54(b) entrance of judgment.  *See* RJN, Ex. 8.  That motion was also denied, *see*

10   RJN, Ex. 9, and the case was transferred to this District.

11   After the case was transferred to this District, Defendants filed the current motion to dismiss.

12   In the motion, Defendants makes two arguments: (1) that CG2 should be dismissed as a defendant

13   with prejudice because of the Alabama district court's determination of fraudulent joinder and (2)

14   that the claim for injunctive relief should also be dismissed because injunctive relief is only a type of

15   relief and not an independent cause of action.

16   In his opposition to the motion to dismiss, Mr. Booth argues that CG2 should be not

17   dismissed as a defendant because Defendants previously represented to the Alabama district court

18   that they were *not* claiming as a defense an offset of damages because of Mr. Booth's violation of

19   the noncompete agreement, but recently they reversed their position.  *See* Opp'n at 5 (claiming that,

20   during Rule 26 conference, Defendants stated that they intended to argue that they were entitled to

21   an offset).  According to Mr. Booth, "this new change in position mandates that CG2 is a necessary

22   party," *id.*, and "this matter should be remanded to the state court from which it came." *Id.* at 6.  Mr.

23   Booth also contends that Defendants should be judicially estopped from raising the noncompete

24   agreement.  Finally, Mr. Booth asserts that the motion to dismiss CG2 as a defendant is moot

25   because CG2 never answered his original complaint and he has now filed a FAC.  *See id.* at 2.

26

27

28

**United States District Court**
For the Northern District of California

5

**United States District Court**
For the Northern District of California

## II.   DISCUSSION

A.      Effect of FAC

As a preliminary matter, the Court addresses the effect of the FAC filed by Mr. Booth.  As noted above, Mr. Booth's original complaint asserted claims against both Quantum and CG2 for (1) a declaratory judgment (on his put rights only) and (2) injunctive relief.  Quantum answered the original complaint but CG2 did not.  In the FAC, Mr. Booth dropped the claim for injunctive relief and instead asserted claims -- again, against both Quantum and CG2 -- for (1) a declaratory judgment (on both his put rights and the noncompete agreement) and (2) a violation of California Business & Professions Code § 17200.

With respect to Quantum, Mr. Booth's filing of the FAC has no effect because Quantum already answered the original complaint.  *See* Fed. R. Civ. P. 15(a) (providing that a party may amend a pleading as a matter of course at any time *before* a responsive pleading is served).  Mr. Booth is not precluded from seeking to amend his claims against Quantum but, in order to do so, he must file a motion for leave to file an amended complaint.  He did not do so.  The Court therefore strikes the allegations of the FAC against Quantum, leaving the original complaint as the only operative pleading against Quantum.

While the filing of the FAC has no effect on Quantum, it is effective ast to CG2 because CG2 – unlike Quantum – failed to answer the original complaint.  *See* 3-15 Moore's Fed. Prac. – Civ. § 15.11 ("If some, but not all, of the defendants have answered, the plaintiff has the right to amend only the claims asserted against the non-answering parties and must obtain leave to amend the complaint as to answering parties.").

Thus, as the pleadings stand, with respect to Quantum, the current claims are still for (1) a declaratory judgment (on Mr. Booth's put rights) and (2) injunctive relief.  With respect to CG2, the current claims are (1) a declaratory judgment (on his put rights and the noncompete agreement) and (2) violation of § 17200.  Defendants challenge the claim for injunctive relief against Quantum and all claims against CG2.

B.    Quantum

As noted above, one of the claims against Quantum is for injunctive relief.  Mr. Booth seems to have included a claim for injunctive relief based on Section 8.10 of the acquisition agreement, which provides as follows:

> Specific Performance.  The parties hereto agree that irreparable damage would occur in the event that any of the provisions of the Agreement were not performed in accordance with their specific terms or were otherwise breached.  It is accordingly agreed that the parties shall be entitled to injunctive relief to prevent breaches of this Agreement and to enforce specifically the terms and provisions hereof . . . , this being in addition to any other remedy to which they are entitled at law or in equity.

Agreement at 41-42.

In their motion to dismiss, Defendants contend that the claim for injunctive relief should be dismissed because it is a remedy and not a cause of action.  The cases cited by Defendants support this contention, *see County of Del Norte v. City of Crescent City*, 71 Cal. App. 4th 965, 973 (1999) ("A permanent injunction is an equitable remedy, not a cause of action, and thus it is attendant to an underlying cause of action."); *Camp v. Board of Supervisors*, 123 Cal. App. 3d 334, 356 (1981) ("'Injunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted.'"),[2] and Mr. Booth has failed to provide any authority to the contrary.  Indeed, it is notable that Mr. Booth, in his attempted FAC against Quantum, dropped the claim for injunctive relief.  Accordingly, the Court finds it appropriate to dismiss the substantive claim for injunctive relief against Quantum.

C.    CG2

As noted above, under the FAC, the claims against CG2 are as follows: (1) a declaratory judgment (on his put rights and the noncompete agreement) and (2) violation of § 17200. Defendants argue that the Court should not allow Mr. Booth to join CG2 as a defendant in this case because the joinder would destroy diversity jurisdiction, Mr. Booth and CG2 being nondiverse parties.

---

[2] The acquisition agreement provides that it "shall be governed and construed in accordance with the laws of the State of California without regard to any applicable conflicts of law."  Agreement at 41.

**United States District Court**
For the Northern District of California

1    At the outset, the Court notes that although the Alabama district court did not formally

2    dismiss CG2 from the original complaint, its finding that CG2 was fraudulently joined implies that

3    CG2 was effectively dismissed for all practical purposes.  Accordingly, Plaintiff's filing of the FAC

4    once again naming CG2 as a defendant subsequent to the Alabama court's order and transfer of the

5    case to this Court operates as a joinder of CG2 herein.  As such, the issue is governed by 28 U.S.C. §

6    1447(e).

7    Under 28 U.S.C. § 1447(e), "[i]f after removal the plaintiff seeks to join additional

8    defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, *or*

9    permit joinder and remand the action to the State court."  28 U.S.C. § 1447(e) (emphasis added).

10   Joinder of CG2 would destroy diversity jurisdiction of this Court.  *See* 28 U.S.C. § 1367(b) (no

11   supplemental jurisdiction in diversity cases over claims between non-diverse parties).  Section

12   1447(e) gives a court discretion in making a decision on joinder.  *See Newcombe v. Adolf Coors Co.*,

13   157 F.3d 686, 691 (9th Cir. 1998) ("The language of § 1447(e) is couched in permissive terms and it

14   clearly gives the district court the discretion to deny joinder."); *see also Mayes v. Rapoport*, 198

15   F.3d 457, 462 (4th Cir. 1999) ("Under Section 1447(e), the actual decision on whether or not to

16   permit joinder of a defendant under these circumstances is committed to the sound discretion of the

17   district court . . . .").

18   Presented with these circumstances, the Ninth Circuit has held the district court three

19   options:  it may:  (1) deem the party "indispensable" and dismiss the case, (2) deem the party not

20   indispensable and continue its jurisdiction over the lawsuit without joinder, or (3) allow joinder and

21   remand the case to state court.  *Yniques v. Cabral*, 985 F.3d 1031, 1035 (9th Cir. 1993).  The

22   threshhold question is whether joinder of CG2 is either required under Rule 19 or permitted under

23   Rule 20.  If joinder is not appropriate, the Court must simply deny joinder.  If joinder is appropriate,

24   the Court must then determine the appropriate course under§ 1447(e).

25   The Court finds joinder is neither mandated under Rule 19 nor permitted under Rule 20.

26

27

28

United States District Court

For the Northern District of California

1        1.    <u>Rule 19(a)</u>

2        Rule 19(a) requires joinder of persons whose absence would preclude the grant of complete

3    relief or whose absence would impede their ability to protect their interests or would subject any of

4    the parties to the danger of inconsistent obligations.  *See* Fed. R. Civ. P. 19(a).

5        In the instant case, the only claim against Quantum that remains is that for a declaratory

6    judgment on Mr. Booth's put rights.  Defendants argue that CG2 "is not a necessary and

7    indispensable party [because the Alabama federal court already determined that] any court could

8    determine Booth's entitlement to the 'put rights' without reference to the Non-Competition

9    Agreement."  Reply at 1.  In short, according to Defendants, the law of the case should bar Mr.

10   Booth from claiming that CG2 is a necessary and indispensable party.

11       The Supreme Court has stated that "the doctrine [of the law of the case] posits that when a

12   court decides upon a rule of law, that decision should continue to govern the same issues in

13   subsequent stages in the same case.  This rule of practice promotes the finality and efficiency of the

14   judicial process by protecting against the agitation of settled issues."  *Christianson v. Colt Indus.*

15   *Operating Corp.*, 486 U.S. 800, 815-16 (1988) (internal quotation marks omitted).  Notably, "the

16   doctrine applies as much to the decisions of a coordinate court in the same case as to a court's own

17   decisions.  Federal courts routinely apply law-of-the-case principles to transfer decisions of

18   coordinate courts."  *Id.* at 816.

19       The Court agrees with Defendants that the Alabama district court's decision is the law of the

20   case such that Mr. Booth cannot resuscitate his claim for declaratory relief on his put rights against

21   CG2.  Moreover, having independently reviewed the issue,[3] the Court agrees with the Alabama

22   district court that whether or not Mr. Booth is entitled to the full value of his put rights will be

23   

24       [3] "[T]he law-of-the-case doctrine 'merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power.'  A court has the power to revisit prior

25   decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was

26   'clearly erroneous and would work a manifest injustice.'" *Id.* at 817; *see also* 18-134 Moore's Fed. Prac. -- Civ. § 134.21[1] ("[W]hen the law of the case doctrine is applied by a court to its own prior decisions,

27   or to the decisions of a coordinate or equal court that has made a prior determination in the case, the doctrine is properly characterized as discretionary in nature. . . . It is not a limit on a court's power to

28   revisit an issue if the court feels such review is necessary.").

United States District Court

For the Northern District of California

1  determined without reference to the noncompete agreement.  There is nothing to suggest, for

2  example, that Mr. Booth's put rights are conditioned upon his agreement not to compete.

3          Mr. Booth asserts, however, that circumstances have changed, thus making law of the case

4  inapplicable.  Mr. Booth points out that Defendants previously represented to the Alabama district

5  court that they were not claiming that violation of the noncompete agreement would offset Mr.

6  Booth's put rights.  *See* Tr. at 32.  Counsel for Defendants stated, for example, that "I will represent

7  to you we're not going to raise that as a basis for not paying him. . . . And in fact, your Honor, if

8  you'll look at our answer, we don't raise that as a basis for not paying him."  Tr. at 33.  Defendants,

9  however, have now changed their tune.  *See* Opp'n at 5 (claiming that, during Rule 26 conference,

10  Defendants stated that they intended to argue that they were entitled to an offset).  According to Mr.

11  Booth, Defendants should be precluded from raising the offset as a defense as a matter of judicial

12  estoppel.

13          To the extent that Defendants do intend to raise an affirmative defense of offset, the Court

14  finds that such a defense is not permitted.  First, the law of the case dictates that the defense is

15  barred.  The Alabama district court previously concluded that "Quantum 3d could not even raise

16  alleged breach of the Non-Competition Agreement as a defense to Plaintiff's claim, as there is no

17  interaction between the put rights and the Non-Competition Agreement.  That is, breach of the Non-

18  Competition Agreement is not a defense to an action on the put rights clause of the Acquisition

19  Agreement."[4]  RJN, Ex. 5, at 8 n.5.

20

21  _____

22          [4] The Alabama district court only said as an "even-if conclusion" that, if the offset defense could
be raised, it would not be a basis for destroying diversity jurisdiction.  *See* RJN, Ex. 5, at 8 n.5.

23          Furthermore, the conclusion itself is legally problematic.  The Alabama district court arrived at
24  this conclusion by citing the well-pleaded complaint rule – *i.e.*, that a court looks to a plaintiff's well-
pleaded complaint and not a defendant's answer to determine the question of federal jurisdiction.  *See*
25  RNJ, Ex. 5, at 8 (citing *Aetna Health, Inc. v. Davila*, 124 S. Ct. 2488, 2494 (2004) ("The Court has
explained that 'whether a case is . . . [a federal question case] must be determined from what necessarily
26  appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything
alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose.'")).
27  However, the well-pleaded complaint rule means that a defense cannot *convert* a case into a federal case
by including a *federal question*.  That is a different matter from whether a defense can *destroy* already-
28  established *diversity* jurisdiction over a complaint by necessitating the joinder of a party that is
nondiverse.

**United States District Court**
For the Northern District of California

1          Second, as argued by Mr. Booth, judicial estoppel prevents Defendants from asserting the

2     offset defense.  "The doctrine of judicial estoppel prevents a party from asserting a claim in a legal

3     proceeding that is inconsistent with a claim taken by that party in a previous proceeding.  Judicial

4     estoppel is an equitable concept intended to prevent the perversion of the judicial process.  It is to be

5     applied where intentional self-contradiction is being used as a means of obtaining unfair advantage."

6     18-134 Moore's Fed. Prac. – § 134.30 (internal quotation marks omitted).  In *New Hampshire v.*

7     *Maine*, 532 U.S. 742 (2001), the Supreme Court acknowledged

8                               that "the circumstances under which judicial estoppel may
      appropriately be invoked are probably not reducible to any general

9                               formulation of principle."  Nevertheless, several factors typically
      inform the decision whether to apply the doctrine in a particular case:

10                              First, a party's later position must be "clearly inconsistent" with its
      earlier position.  Second, courts regularly inquire whether the party

11                              has succeeded in persuading a court to accept that party's earlier
      position, so that judicial acceptance of an inconsistent position in a

12                              later proceeding would create "the perception that either the first or the
      second court was misled."  Absent success in a prior proceeding, a

13                              party's later inconsistent position introduces no "risk of inconsistent
      court determinations," and thus poses little threat to judicial integrity.

14                              A third consideration is whether the party seeking to assert an
      inconsistent position would derive an unfair advantage or impose an

15                              unfair detriment on the opposing party if not estopped.

16    *Id.* at 750-51.

17         Defendants argue that judicial estoppel should not be applied because they have not taken

18    inconsistent positions before the Alabama district court and this Court, but the record suggests

19    otherwise.  As noted above, Defendants' counsel made the statements that "I will represent to you

20    we're not going to raise that as a basis for not paying him. . . . And in fact, your Honor, if you'll look

21    at our answer, we don't raise that as a basis for not paying him."  Tr. at 33.  Defendants concede that

22    their counsel (apparently prior counsel) made these statements but maintains that the *intent* of the

23    statements was not to play "fast and loose" with the Alabama district court or gain an improper

24    advantage.  *See* Reply at 14.  This argument is not persuasive.  Counsel's true intent is impossible to

25    divine from the record.  In any event, the key is the representation and argument made to the Court

26    viewed objectively, not counsel's latent subjective intent.  Moreover, simply because counsel made

27    the argument that the offset defense, even if raised, would not destroy diversity jurisdiction does not

28    gainsay the fact that Quantum gained an advantage from its representation that it did not seek an

**United States District Court**
For the Northern District of California

offset -- *i.e.*, getting CG2 out of the case which allowed the Alabama district court to assert

(diversity) jurisdiction.  *See Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th

Cir. 1996) ("Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent

positions, precludes a party from gaining an advantage by taking one position, and then seeking a

second advantage by taking an incompatible position.").

Finally, it is worth noting that, in all likelihood, Defendants could not legitimately assert an

affirmative defense of offset because as all the parties agreed in open court, the noncompete

agreement contains a broad arbitration clause.  *See* Noncompete Agreement at 5 ("Any claim or

dispute arising out of or in connection with this Agreement will be finally settled by binding

arbitration in Santa Clara County, California . . . .").

Because the affirmative defense of offset shall not be permitted, based on the law of the case

as well as the merits independently evaluated by this Court, CG2 is not a necessary and

indispensable party.  Indeed, the claim against it is not even tangentially related to the cause of

action against Quantum, because the issue regarding Mr. Booth's put rights (the sole issue remaining

as to Quantum) will be determined without reference to the noncompete agreement.

2.    Rule 20

For the same reasons, the Court also concludes that CG2 may not be permissibly joined

under Rule 20.  Given the Alabama district court's and this Court's conclusion that Plaintiff's put

rights are entirely independent of its alleged breach of the non-competition agreement, the two

claims do not arise out of the same "transaction" or "occurrence;" nor do the claims give rise to any

common question of  law or fact as required by Rule 19(a).

3.    Factors Under 28 U.S.C. § 1447(e)

Even if joinder were permissible, joinder would not be appropriate under the multi-factor test

applicable under 28 U.S.C. § 1447(e).  Factors that courts have considered in making a decision on

joinder include: (1) whether the defendant sought to be joined is needed for just adjudication and

would be joined under Federal Rule of Civil Procedure 19(a); (2) whether the claims against the new

defendant appear valid; (3) the plaintiff's delay in seeking the joinder, including the reason for

delay; (4) the plaintiff's motivation in seeking the amendment; (5) whether the statute of limitations

1  would preclude an original action against the new defendant in state court (or another forum); (6) the

2  likelihood of multiple litigation if the amendment is not permitted; (7) any prejudice to the

3  defendant; (8) whether the plaintiff will be significantly injured if the amendment is not allowed;

4  and (9) any other factor bearing on the equities.[5]

5           a.      Validity of Claims

6           Mr. Booth has asserted against CG2 claims for (1) a declaratory judgment (based on his put

7  rights and the noncompete agreement) and (2) a violation of § 17200 (implicating both the put rights

8  and the noncompete agreement).  The declaratory judgment claim based on the put rights is lacking

9  in merit.  As the Alabama district court pointed out, the only party that has any obligation as to the

10  put rights is Quantum, not CG2.  *See* RJN, Ex. 5, at 7.  For the same reason, to the extent the §

11  17200 claim is based on the put rights, that claim against CG2 also lacks merit.

12          As for the declaratory judgment claim based on the noncompete agreement, the claim may or

13  may not have validity.  On the one hand, the noncompete agreement was signed only by Quantum

14  (*i.e.*, not CG2) and Mr. Booth.  On the other hand, the agreement provides that the agreement is

15  between "Quantum3D, Inc., a California corporation, and *each of its present or future subsidiaries*

16  (together, the 'Company'), and Scott R. Booth ('Covenantor')."  Noncompete Agreement at 1

17  (emphasis added).

18          b.      Delay in Seeking Joinder

19          Arguably, Mr. Booth did not delay in asserting a claim against CG2 for a declaratory

20  judgment on his put rights.  That claim was part of his original complaint, and it appears that Mr.

---

22      [5] *See, e.g.*, *Mayes*, 198 F.3d at 462 (listing as factors to consider "'the extent to which the
23  purpose of the amendment is to defeat federal jurisdiction, whether the plaintiff has been dilatory in
   asking for amendment, whether the plaintiff will be significantly injured if amendment is not allowed,
24  and any other factors bearing on the equities'"); *Newcombe*, 157 F.3d at 691 (upholding district court
   decision not to remand; noting that district court considered "the potential prejudice to [plaintiff],
25  balanced the equities, and determined that no injustice would occur"); *Nazario v. Deere & Co.*, 295 F.
   Supp. 2d 360, 363 (S.D.N.Y. 2003) (listing as factors "(1) any delay, as well as the reason for delay, in
26  seeking joinder; (2) resulting prejudice to defendant; (3) likelihood of multiple litigation; and (4)
   plaintiff's motivation for the amendment"); *IBC*, 125 F. Supp. 2d at 1011 (listing as factors "(1) whether
27  the party sought to be joined is needed for just adjudication and would be joined under Federal Rule of
   Civil Procedure 19(a); (2) whether the statute of limitations would preclude an original action against
28  the new defendants in state court; (3) whether there has been unexplained delay in requesting joinder;
   (4) whether joinder is intended solely to defeat federal jurisdiction; (5) whether the claims against the
   new defendant appear valid; and (6) whether denial of joinder will prejudice the plaintiff").

United States District Court

For the Northern District of California

1   Booth sought to re-introduce the claim only after Defendants indicated at the Rule 26 conference

2   that they would make an affirmative defense of offset.  However, there is no reason for Mr. Booth to

3   have delayed in asserting a claim against CG2 for declaratory judgment on the noncompete

4   agreement.  Mr. Booth was aware of the facts underlying this claim at the time his original

5   complaint was filed in Alabama state court.  Moreover, Mr. Booth does not explain why he failed to

6   raise a § 17200 claim against CG2 until May 11, 2005.  Mr. Booth could have asserted a § 17200

7   claim even while proceeding in the Alabama state and federal courts because the acquisition

8   agreement provided that it "shall be governed and construed in accordance with the laws of the State

9   of California."  Acquisition Agreement at 41.

10           c.      Motivation in Seeking Amendment

11          "Suspicion of diversity destroying amendments is not as important now that § 1447(e) gives

12   courts more flexibility in dealing with the addition of such defendants."  *IBC*, 125 F. Supp. 2d at

13   1012.  However, in the instant case, given the history of the proceedings, it appears that the attempt

14   to join CG2 is yet another attempt by Mr. Booth to destroy diversity and get his case back in state

15   court.[6]  *Cf. Burka v. Aetna Life Ins. Co.*, 894 F. Supp. 28, 32 (D.D.C. 1995) ("Here, it is quite

16   evidence that the Plaintiffs' instant Motion constitutes an attempt to manipulate the system to

17   produce the forum of their choice following unfavorable rulings by this Circuit.").  As discussed

18   above, after the Alabama district court denied Mr. Booth's motion to remand, Mr. Booth made

19   repeated attempts to keep his case in state court -- *e.g.*, asking the Alabama district court to enter an

20   order allowing him to file an interlocutory appeal of the court's decision regarding subject matter

21   jurisdiction and then filing a motion to reconsider or, in the alternative, for 54(b) entrance of

22   judgment.

23           d.      Statute of Limitations

24          It is unlikely that the statute of limitations would preclude an original action against CG2 in

25   state court or another forum such as arbitration (to the extent the noncompete agreement must be

26

27          [6] Notably, Mr. Booth argued in his opposition that the case should be remanded back to an
    *Alabama* state court.  *See* Opp'n at 6 ("[T]his matter should be remanded to the state court from which
28  it came.").

United States District Court
For the Northern District of California

1  arbitrated).  The declaratory judgment claims against CG2 are based on breach of contract which,

2  under California law, has a four-year statute of limitations.  *See* Cal. Code Civ. Proc. § 337(1); *see*

3  *also 118 East 60th Owners, Inc. v. Bonner Properties, Inc.*, 677 F.2d 200, 202 (2d Cir. 1982)

4  ("When the declaratory judgment sought by a plaintiff would declare his entitlement to some

5  affirmative relief, his suit is time-barred if the applicable limitations period has run on a direct claim

6  to obtain such relief.").  As for the § 17200 claim, that too has a four-year statute of limitations.  *See*

7  Cal. Bus. & Prof. Code § 17208 ("Any action to enforce any cause of action pursuant to this chapter

8  shall be commenced within four years after the cause of action accrued."  Cal. Bus. & Prof. Code §

9  17208.").

10                e.        Likelihood of Multiple Litigation

11         The likelihood of multiple litigation on the same claim is slim.  *See IBC*, 125 F. Supp. at

12  1012 (stating that, even though plaintiff could bring a state court action against defendant sought to

13  be joined, requiring plaintiff "to litigate essentially the same issues in two forums would be a waste

14  of judicial resources and risk inconsistent results").  As discussed above, the only party that has any

15  obligation as to the put rights is Quantum.  Therefore, there cannot be another suit in which CG2

16  makes a claim related to the put rights.  Also, this Court has stated that it will not allow Defendants

17  to make an offset affirmative defense in this case; consequently, this action will not duplicate

18  another (possible) lawsuit addressing the matter of whether Mr. Booth breached the noncompete

19  agreement.

20         Finally, it is worth noting that, at the hearing on the motion to dismiss, Defendants conceded

21  on the record that Quantum and CG2 are in privity.  Consequently, a judgment with respect to

22  Quantum will bind CG2 and vice-versa.  *See Hells Canyon Pres. Council v. United States Forest*

23  *Serv.*, 403 F.3d 683, 686 (9th Cir. 2005) ("'[T]he doctrine of res judicata provides that a final

24  judgment on the merits bars further claims by parties or their privies based on the same cause of

25  action . . . .'").

26                f.        Prejudice to Defendants and/or Mr. Booth

27         Although allowing the joinder here would not prejudice Defendants to the extent that

28  "discovery has not yet begun" in this case, *IBC*, 125 F. Supp. at 1012, the joinder would harm

15

United States District Court
For the Northern District of California

1   Defendants by depriving them of a federal forum to which they are entitled -- indeed, which the

2   Alabama district court determined that they were entitled because of the fraudulent joinder of CG2.

3          As for prejudice to Mr. Booth, he will not be significantly injured if the joinder were not

4   permitted because, as discussed above, denial of the joinder likely will not create a time bar nor will

5   it create multiple litigation on a same claim.

6                    g.      Summary

7          Based on the factors discussed above, the Court finds that, on balance, joinder would not be

8   appropriate even if joinder were permitted.  Of particular significance is the fact that complete relief

9   may be achieved regarding the put rights without the involvement of CG2 (*i.e.*, it is not a necessary

10  and indispensable party), Mr. Booth delayed in seeking the amendment, his motivation appears to be

11  directed to defeating federal jurisdiction, and multiple litigation of the same claim is unlikely.

12                    III.    CONCLUSION

13         For the foregoing reasons, the Court grants Defendants' motion to dismiss.  More

14  specifically, claims against Quantum in the FAC are stricken, leaving only claims asserted against

15  Quantum contained in the original complaint:  (1) a declaratory judgment (on Mr. Booth's put

16  rights) and (2) injunctive relief.  The claim for injunctive relief is dismissed.  All claims against CG2

17  are dismissed for the reasons stated by the Atlanta district court and expressed herein.  Said

18  dismissal does not prejudice the parties from seeking relief or judgment on the non-competition

19  claims in the appropriate forum.

20         Any further amendment as to claims against Quantum relating to the put-rights must be

21  pursuant to stipulation or leave of Court.

22         This order disposes of Docket Nos. 14 and 15.

23

24         IT IS SO ORDERED.

25

26  Dated:  June 15, 2005

27                                                      _____

28                                                      EDWARD M. CHEN
                                                        United States Magistrate Judge

16